

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2005

# Ling v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3420

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ling v. Atty Gen USA" (2005). *2005 Decisions.* Paper 653.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/653

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-3420
_____

CHONG QIANG LING
a/k/a Cong Qiang Lin

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent


Chong Qiang Ling,

Petitioner


_____


On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A78-746-416)
_____


Submitted Under Third Circuit LAR 34.1(a)
May 18, 2005

Before: ROTH, MCKEE AND ALDISERT, <u>CIRCUIT JUDGES</u>
(Filed : August 25, 2005)


_____

OPINION
_____

PER CURIAM

I.

Chong Qiang Ling, a native and citizen of the Peoples Republic of China, entered the United States in 2001. Ling conceded his removability for being present without having been admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(I), and sought political asylum based on China's family planning policies. The Immigration Judge ("IJ") found Ling's testimony not credible and denied asylum, statutory withholding of removal, and relief under the Convention Against Torture. The Board of Immigration Appeals ("BIA") affirmed without opinion. Ling now petitions for review.

II.

Where, as in this case, the BIA defers to the IJ's decision, the Court reviews the IJ's adverse credibility determination under the substantial evidence standard. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003). We will uphold the IJ's findings "to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the [IJ] did." Id. (quotations omitted). Upon review of the record, we find that the IJ's adverse credibility determination is not supported by the record.

The IJ based his adverse credibility determination primarily on two discrepancies in Ling's claim. "Generally, minor inconsistencies and minor admissions that reveal

2

nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding. The discrepancies must involve the heart of the asylum claim." Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004) (quotations and citations omitted).

The IJ found most significant the inconsistency regarding the denial of a marriage certificate. Administrative Record ("A.R.") 169-70. Ling testified that he and his wife were denied a marriage certificate in December 1997 because his wife was "one year short" of the minimum 20 year age requirement, A.R. 217, 233, 258, even though his wife was born in May 1977 and was therefore 20 years old in December 1997.[1] We recognize that Ling's purported attempt to obtain a marriage certificate was the trigger for the alleged forced abortion. However, the denial of the marriage certificate does not go to the heart of Ling's asylum claim. Ling was issued a marriage certificate the following month. A.R. 362. Moreover, Ling did not leave China until more than three years later, and sought asylum not because of the initial denial of a marriage certificate or because of the abortion, but because after the birth of their first child, his wife was forced to use an intrauterine device ("IUD") and they were restricted from having another child for 10

---

[1] As recognized by the IJ, if based on the Chinese method of age calculation whereby a person is one year old on the date of her birth and becomes one year older upon the passing of the Chinese New Year, Ling's wife would have been considered 21 years old. Furthermore, although the state department report indicates that some localities have set the female minimum age requirement higher than 20, A.R. 273, Ling did not assert that his locality had a higher age requirement, see A.R. 233.

3

years. A.R. 227-28, 514-15.[2]

The IJ also relied on the discrepancy in the month that Ling and his wife returned home after hiding from government officials. A.R. 168-69. Ling's wife gave birth in January 2000. A.R. 221. Upon becoming pregnant again in May 2000, Ling and his wife left home and went into hiding with relatives. A.R. 222-24. Government officials went to their home in June or July to notify Ling's wife that she was required to obtain an IUD. A.R. 224. Ling and his wife continued to hide out, but eventually returned home after Ling's wife had a miscarriage. A.R. 225. Upon their return, government officials confronted Ling, forcing his wife to have an IUD inserted and imposing a 10-year prohibition on having another child. A.R. 226-27, 514. Ling's application states that they returned in October 2000. A.R. 514. However, Ling testified that they returned in December 2000, and in response to the IJ's questioning associated the event with the end of the year. A.R. 226. When confronted with this discrepancy, Ling stated that they had returned in October and that he had confused the question with the timing of the December 1997 abortion. A.R. 240. Although despite repeated questioning Ling did not correct himself until confronted with the discrepancy, Ling provided a reasonable explanation for the inconsistency. Moreover, even if the explanation was not reasonable,

_____

[2] Although we need not address the credibility of Ling's allegations about the denial of a marriage certificate and the abortion, we note that the IJ did not discuss the corroborating letter from Ling's wife, A.R. 336, and there is nothing in the record to support the IJ's finding that the abortion certificate was suspicious. See Berishaj, 378 F.3d at 323 (recognizing that adverse credibility determinations based on speculation or conjecture are reversible).

4

in the absence of any other inconsistencies involving the heart of the asylum claim, we can not say that this discrepancy alone provides "reasonable, substantial and probative evidence" to support the adverse credibility determination. Mulanga, supra; cf. Chen v. Ashcroft, 376 F.3d 215, 224 (3d Cir. 2004) (relying on numerous inconsistencies, including discrepancy in duration of alien's time in hiding, in upholding adverse credibility determination).

The IJ noted concerns with other aspects of Ling's claim, such as the date of his marriage, the household registration of his child, and the lack of additional entries in the IUD checkup booklet. See A.R. 166-68. However, we need not address these issues because the IJ concluded that they were tangential to the asylum claim and did not in and of themselves undermine Ling's credibility.

In sum, we find that the discrepancies relied on by the IJ do not provide an adequate basis for an adverse credibility finding, and therefore are not supported by substantial evidence. Accordingly, we will grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.